The appeal involves a single question, viz., whether the memorandum of sale was sufficient, within the statute of frauds. The action was to recover, against the purchaser of real estate at auction, the difference between the price which he agreed to pay and the price at which it was subsequently re-sold. The property, which was city lots, was sold by Bleecker, an auctioneer, by order of the plaintiffs, on the 25th May, 1852. The defendant was a *Page 591 
bidder at the sale, and eight lots were struck off to him. At the close of the sales for the day, the auctioneer subscribed a partly printed and partly written memorandum in his book of sales. This memorandum set forth the name of the party owning the lots. They were described as building lots on 132d and 133d streets, between Fifth and Sixth avenues, numbered 132, 133, 134, 135, 152, 154, 155 and 156. The name of the defendant was inserted as the purchaser, at the price of $471 per lot. In the printed form was a caption, "terms of sale," which was blank; but before the sale commenced the terms of sale embraced in a letter from Tallman were pinned to the page on which the entry of the sales for the day were made, and which was the memorandum signed by the auctioneer. It was not controverted that the letter was thus attached at the time Bleecker subscribed the memorandum of sales. The defendant not having complied with the terms of the purchase, the lots were re-sold. The court ruled that the memorandum was insufficient in law to authorize a recovery by the plaintiffs, and ordered the complaint to be dismissed. The case fails to state in what respect the judge at the trial deemed the memorandum to be defective. At general term, however the defects were held to be, that the entry in the sales book as subscribed by the auctioneer, contained no statement of the terms and conditions of the sale, and that the description of the lots was too indefinite and uncertain.
The statute avoids every contract for the sale of lands, or any interest in lands, unless the contract, or some note or memorandum thereof, expressing the consideration, be in writing, and subscribed by the party by whom the sale is to be made, or his agent lawfully authorized. (2 R.S., 135, § 8, 9.) The authority of Bleecker to make the sale and subscribe the contract in this case was not questioned. The auctioneer was the agent of the owner of the lots to effect the sale, and was lawfully authorized to sign the writing required by the statute of frauds to give validity to it. The *Page 592 
only question properly arising is, whether the instrument subscribed by Bleecker was a contract binding on the plaintiffs, and which could be specifically enforced in a court of equity.
It is undoubtedly true that the writing subscribed should contain all the particulars of a valid contract, capable of being enforced in a court of equity without further or extrinsic proof. The writing itself may contain all the particulars of the contract, or it may refer to some other instrument or writing for a part of them. The instrument subscribed may be partly written and partly printed, and consist of one or more pieces of paper, provided they are attached and form together the contract to which the seller affixes his signature. Had the contents of the letter which contained the conditions of sale been copied on the memorandum under the head "terms of sale," instead of being pinned to it at the time of subscribing, it would scarcely have been pretended that the contract was defective in omitting to state the conditions of sale. It seems to me that the letter, attached as it was to the writing subscribed, was intended to be, and was as much a part of the written contract of sale as though it had been transcribed upon the auctioneer's sales book. It was made by the seller an integral part of the contract.
Nor do I think there was such an uncertainty in the description of the lots as to render the contract incapable of execution, and therefore void. They are described as building lots, on 132d and 133d streets, between the Fifth and Sixth avenues. The numbers of the lots are given. It is said that there is no designation of the lots belonging severally to each street. Conceding this to be so, still I see no insuperable difficulty in locating them; besides, the memorandum described them as Harlem lots, resold on account of former purchasers at the sale on the eighteenth of May failing to comply with the terms of sale. Here was a reference to a previous sale, in which the property *Page 593 
was minutely described, and the map thereof specially referred to.
The writing subscribed by Bleecker, I think was sufficient There certainly can be no force in the objection that he did not attach the designation of agent to his signature, as it was entirely apparent from the writing itself that he was acting only in that capacity. Nor does the objection that the contract was not subscribed until the entire sales of the lots were completed, rest on any solid foundation.
The judgment of the superior court should be reversed and a new trial ordered.
Judgment accordingly.